**L. G. GREGG, Appellant,**

v.

**Willie HOWARD et ux., Appellees.**

No. 13867.

Court of Civil Appeals of Texas.

Houston.

Feb. 28, 1963.

Rehearing Denied March 21, 1963.

Croom & Barnes, Sam G. Croom, Houston, for appellant.

Herman D. Voorhees, Gordon L. Moise, Houston, for appellees.

BELL, Chief Justice.

Appellees recovered judgment against appellant for $500.00 together with interest of $92.15. This recovery was based on the action of appellant in allegedly making an undisclosed profit of $500.00 on a transaction with appellees when there allegedly existed between appellant and appellees a confidential relationship. The basis of the alleged confidential relationship was that appellant was the pastor of appellees' church, the Pilgrim Baptist Church, at the time of the transaction. Trial was to a jury and the court rendered judgment on the verdict and certain fact findings made by the court in its judgment.

Appellees alleged that on March 12, 1958 they, under a contract of purchase, purchased from Roy D. Guyon and wife, a certain home on Firnat Street in Houston for the sum of $4,600.00. $400.00 was paid in cash and the deferred portion of the purchase price was to be paid at the rate of $45.00 per month, including interest at the rate of 6½% per annum, plus $5.36 per month for taxes and insurance. The contract provided that the balance of the purchase price of $4,200.00, if paid within 60 days from March 12, 1958, would be reduced $500.00 so the appellees would have to pay only $3,700.00, which would mean the total purchase price would be $4,100.00. It is then alleged that by April 9, 1958, appellees had paid $2,000.00. Guyon then told appellees he would arrange for financing the balance and appellees allege this would entitle them to the $500.00 reduction. It is then alleged that appellant intervened and stated he could arrange financing on better terms than the sellers. Then it is alleged appellant "at that time was pastor of the Church which plaintiffs attended and they believed and relied upon what defendant told them about such financing." Then follows the allegation that on April 17, 1958, appellant "induced" appellees to execute a promissory note in the amount of $2,600.00 with interest at the rate of 6½% per annum payable to Port City State Bank in monthly installments of $50.00. This note and the

deed of trust securing it were assigned to appellant, May 8, 1958. Appellees allege the note should have been for $2,100.00 because of the $500.00 discount above noticed. Only $2,100.00 was paid the Guyons. Appellees assert $500.00 of the proceeds of this $2,600.00 note executed to the bank were unlawfully retained by appellant and that they are entitled to recover the $500.00 and have the note and deed of trust reformed.

Appellees' theory, as pled, was that appellant, who stood in a confidential relation to them because he was the pastor of the church they attended, induced them to execute a note for $2,600.00 instead of $2,100.00 and appellant paid Guyon only $2,100.00 and kept $500.00 of the proceeds of the $2,600.00 for himself, which was a secret profit.

The jury found as follows:

1. Appellant induced appellees to execute the note and deed of trust.

2. Appellees executed said instruments in reliance on appellant's inducement.

3. Appellees would not have executed them but for their reliance on appellant.

4. At the time of the inducement appellant intended to have the note assigned to himself and to discharge the balance due Roy Guyon and wife by the payment of $2,100.00.

5. This intention was concealed from appellees.

In addition to the facts found by the jury, the court in its judgment made the following findings of fact:

1. The note and deed of trust were assigned by the Port City State Bank to appellant on May 8, 1958, and appellant paid Guyon and wife $2,100.00.

2. The bank never owned the note.

3. A confidential relation existed between appellant and appellees.

4. Appellant as a fiduciary made a profit on the transaction which was not disclosed.

Recovery of a personal judgment for $500.00 plus interest at the rate of 6½% per annum, or $92.15, was allowed.

Appellant asserts 13 Points of Error. We need not notice each because they really present these basic contentions:

1. There is neither pleading nor evidence to support a personal judgment for $500.00 and interest.

2. There is neither pleading nor evidence to support a finding there was a confidential relationship between appellant and appellees.

3. There was error in allowing Roy Guyon to testify he had made arrangements with Pasadena Savings and Loan Association for a loan of $2,100.00 at 6% interest because it was hearsay.

4. There is no evidence to support the answer to Special Issue No. 2 finding appellant induced appellees to execute the note because the undisputed evidence shows they consulted a lawyer of their choice who at their request inserted a provision that if the note was paid by May 12, 1958, there would be a discount of $500.00.

5. The answer to Special Issue No. 2 is against the preponderance and manifest weight of the evidence.

6. The court erred in refusing to grant appellant's motion for instructed verdict and his motion for judgment notwithstanding the verdict.

From the evidence it appears that appellant and appellees became acquainted in 1954. They attended the same church. Appellant was not then a minister. He had a religious radio program. He used the congregation of this church to furnish the music for the program. Mr. Howard, as a musician, participated with the congregation in the program. In 1955 appellant, having been ordained as a minister, founded the Pilgrim Baptist Church. Sometime after it was founded, just when is not clear, the Howards began attending this church. Later, just when is not clear, Mr. Howard

joined this church and was baptized. Mrs. Howard never became a member of the church. Mr. Howard was a member when the transaction here involved occurred. There is no evidence of any real association between the parties other than as minister and church member. Mr. Howard did testify that Mr. Gregg was his spiritual advisor but testified to no facts showing any special spiritual advice given by Mr. Gregg. What the evidence amounts to is a mere showing of the relation of minister and church member between Mr. Howard and Mr. Gregg.

We must examine the testimony. It is undisputed that appellees entered into a contract with Mr. Guyon and his wife on March 12, 1958, to purchase the property for $4,600.00. $400.00 was paid at the time and the deferred consideration was to be paid at the rate of $45.00 per month and it was to bear interest at the rate of 6½% per annum. There was a provision that all or any part of the balance could be prepaid and that if the entire balance were paid within 60 days the balance to be paid would be reduced to $3,700.00. Sometime shortly before the execution of the note and deed of trust of April 17, 1958, the Howards had paid a total of $2,000.00, leaving a balance of $2,600.00 owing. If the balance was paid by May 12 the Howards would have paid only $2,100.00 because of the discount provision noted.

Mr. Howard testified that sometime after he bought the property Mr. Guyon told him he needed his money to use in some business transaction and asked if it would be all right if the Howards borrowed the money and paid him. He was to pay $2,100.00 because this was within the 60 day period. He did not ask appellant to assist in paying Guyon, but appellant called him and told him he would help finance it and he could get a better deal. Appellant said he would have to borrow the money. Appellant did not tell him he was going to have to sign a note for $2,600.00 at that time. Mr. Howard did not know at that time how much the note was to be for.

He had unlimited trust and confidence in appellant. He found out the note was to be for $2,600.00 instead of $2,100.00 at the time he signed it. Appellant told him he had to borrow $2,600.00, that the bank wouldn't lend him the money unless the note called for the original amount provided in the contract. He knew the note was for $2,600.00 when he signed it. Appellant told him he could give back the $500.00 difference. He told Howard he would either take it off the principal or hand it back to him. No explanation was offered concerning the provision for 6½% interest. Howard believed appellant when he told him he would hand the money back or take it off the principal. Howard took the deed of trust that had been prepared to an attorney of his own choice. The deed of trust described the $2,600.00 note later executed. The deed of trust did not have a provision that if the note was paid by May 12 the principal amount would be reduced to $2,100.00. Mr. Bailey added such provision for him. While Mr. Howard leaves the evidence uncertain as to what instruments were taken to Mr. Bailey, both the note and the deed of trust which were introduced in evidence contain the provision with regard to the $500.00 discount if it was paid by May 12. Mr. Howard testified he understood he would get a discount of $500.00 if he paid it by May 12. He did not pay by May 12 and a substantial amount was still owing at the time of trial. He said he thought if the $500.00 was his he should have it and if it was appellant's, appellant should have it. The reason he filed suit was to find out what happened and if the money was his he should have it. He took the papers to Mr. Bailey because he thought it was good business to have a third party look over the papers. At the time the provision with respect to the $500.00 discount was put in the papers he intended to pay the balance by May 12.

Mrs. Howard testified she knew the contract with the Guyons provided for the $500.00 deduction if they paid the full pur-

chase price within 60 days. When they later refinanced the contract she knew they got a deed. She asked appellant for it and he told her everything was being taken care of. She signed the note payable to the Port City State Bank in Mr. Bailey's office. She did not remember signing the deed of trust. Appellant wasn't present when she signed. Mr. Bailey explained the note was for $2,600.00. They told him what the deal was and he said he would change it. Mr. Bailey told them that he was changing it. They then went to appellant and she told appellant Mr. Bailey had changed it from $2,600.00 to $2,100.00. Appellant said, "I couldn't understand why that had to be $2,600.00 instead of $2,100.00." She thought the $500.00 had been substracted until in October when they discovered differently. She would not have signed it if she had known it was for $2,600.00. She did not read it after it was supposedly changed.

Appellant testified he paid $2,100.00 for the note. He contacted the bank for appellees. Mr. Hicks, the bank's representative, told him to go ahead and have the papers prepared and executed and he (Hicks) would have the property inspected. He agreed with Mr. Hicks that if the bank couldn't make the loan he would accept the note and deed of trust. The bank, after inspecting the property, would not make the loan and on May 8, 1958, assigned the note and deed of trust to appellant. He paid Guyon $2,100.00. He did not pay the bank anything and the bank paid him nothing. The bank did not lend him any money on the note. The reason the note was made for $2,600.00 is because the contract was for $2,600.00 and that is what was being purchased. The Howards would have been entitled to the $500.00 discount if they had paid by May 12. They did not pay by that date. They have kept up the installments. He denied he "butted in" and said he was asked by Mr. Howard to purchase the contract. He was ordained as a minister in 1954 and founded the Pilgrim Baptist Church in 1955. He baptized Mr. Howard.

Mrs. Howard was not a member of his church. Mr. Howard called him and told him Mr. Guyon wanted his money and asked if appellant would "help to buy Guyon off." His church is affiliated with the Bible Baptist Fellowship. The church property belonged to him and his wife because they paid for it. Appellant was also in the insurance and real estate business.

Mr. Hicks, President of the bank, testified appellant offered to sell the note to the bank. After appraising the property, he decided not to take it. The bank advanced no money on the note. He did not recall whether appellant asked for a $2,100.00 loan. When they decided not to take the note, since the papers had already been made out they assigned them to appellant.

Mr. Bailey, the attorney, testified that appellees came to his office. The note and deed of trust did not have the provision with regard to the $500.00 discount. They explained to him that the agreement they had was that if they paid the balance by May 12 they would be entitled to a $500.00 discount. Mr. Lusk, Mr. Bailey's partner, dictated the provision in the note and deed of trust. Mr. Bailey, in appellees' presence, told Mr. Lusk the provision they desired. They did not tell him of any agreement with appellant that he would give them back $500.00 regardless of what happened.

Mr. Guyon testified, over appellant's objection that it was hearsay, that he had arranged with Pasadena Savings and Loan Association for $2,100.00 at 6% interest. The deal did not go through because appellant was going to handle it. He was finally paid $2,100.00. At one place, on cross-examination, Mr. Guyon testified Mr. and Mrs. Howard had not yet been approved as borrowers. No credit application for them had been made. He had friendly association with Pasadena Savings and Loan Association and he thought they would approve the loan. He told an officer of the Association about Mr. and Mrs. Howard and about the value of the property and how much would be against the property,

and the officer said, "It sounded like a good deal to him and it sounded like it would be accepted." He then said, "I feel sure it would have gone through."

We have reached the conclusion that the case must be reversed and remanded for a new trial.

■ There was error in allowing Mr. Guyon to testify in effect that he had arranged with Pasadena Savings and Loan Association to refinance the contract for $2,100.00 at 6% interest. He stated he talked with an officer of the Association and discussed the matter with him and the officer told him it seemed like a good deal to him and it looked like they would take it. At another place in his testimony he testified the Association agreed to make the loan. This was hearsay testimony as to appellant because it was offered to prove as a fact that arrangements had been made for a loan to appellees for $2,100.00 at 6% interest and appellant was not shown to have been present.

Clearly such testimony was harmful. Appellees' position was that the note they finally executed should have been for $2,100.00 with 6% interest and since they could have gotten a loan of this nature they would not have signed the $2,600.00 note with 6½% interest except for appellant's conduct. Appellant's position was that he bought the $2,600.00 note (contract) which bore interest at 6½% and was refinancing the contract of sale which would allow the $500.00 discount only if $2,100.00 was paid by May 12. The effect of the testimony was to strongly support appellees' position and refute that of appellant.

■ Too, there was error in rendering a personal judgment against appellant for $500.00 and interest because there is no evidence that appellant had received any profit except to the extent that the note was for $2,600.00 instead of $2,100.00. However, all of the evidence showed the note had not been paid and also that appellant had not received any money or other thing

of value. He would receive no profit unless and until an amount more than $2,100.00 and 6% interest should be paid.

■ We think the case was tried on the wrong theory. The theory pled was that there was a confidential relationship between appellant and appellees and that appellant induced appellees to execute a note payable to the bank for $2,600.00 with interest at the rate of 6½% per annum, when appellant had to pay Guyon only $2,100.00 and appellant did not disclose that he was to retain $500.00 of the proceeds of the note. Apparently appellees thought the bank had paid appellant $2,600.00 and he used only $2,100.00 to pay Guyon. The evidence does not support any such theory. The evidence shows appellees knew they had to pay Mr. Guyon only $2,100.00 because payment to him was before May 12 and under the contract of sale if payment was made by May 12 they would be entitled to a $500.00 discount. Too, the evidence reflects that appellees knew the note to the bank, that was subsequently assigned to appellant, was for $2,600.00. Appellees, according to their own testimony, took the note, which was for $2,600.00, and the deed of trust, neither of which provided for the $500.00 discount if it was paid by May 12, to a lawyer of their choice and had him put the discount provision in the note and deed of trust. Too, the evidence from the Howards themselves was that appellant told them the reason for the note being in that amount was that the bank would lend only the amount provided in the original contract, and he then told them he would either credit the $500.00 on the principal or give it back to them. They did testify they did not know the note was assigned to appellant.

The result is that appellees' cause of action is not to recover an undisclosed profit that their alleged fiduciary allegedly made. There was, under their own testimony, no concealment. Their cause of action is to reform the note and deed of trust because of this affirmative representation made by appellant at the time the note and deed of

trust were executed, that caused them to execute the instruments providing for $2,-600.00, that he would either pay them the $500.00 or credit it on the note. If it is found that he made such representations, that appellees relied upon them, and that appellant had no intention at the time of performing them, then there would be fraud that induced the making of the note and deed of trust that would entitle them to reformation. If it can be shown in addition to the above that an amount above $2,100.00 plus 6½% interest has been paid, appellees could recover such amount together with any interest paid more than 6½% on $2,100.00.

In the light of our disposition of the case, it is unnecessary for us to determine whether a confidential relation existed.

The judgment of the trial court is reversed and the cause is remanded for trial.